IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN E. TARPLEY,                          *

     Plaintiff,                          *

v.                                          *          Civil Action No. GLR-15-592

SECRETARY CARROLL A. PARRISH, et al., *

     Defendants.                          *

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Plaintiff's Motions for Default Judgment (ECF No. 18) and for Injunctive Relief (ECF No. 27) and Defendants' Motion for Extension of Time (ECF No. 20) and Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 23).  Having considered the Motions and supporting documents, the Court finds no hearing necessary.  <u>See</u> Local Rule 105.6 (D.Md. 2014).  For the reasons stated below, Plaintiff's Motions will be denied and Defendants' Motions will be granted.

## I.     BACKGROUND

Plaintiff Steven E. Tarpley is an inmate confined to North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.  On June 7, 2010, Tarpley arrived at NBCI with approximately 817 pages of a trial transcript and other legal materials pertaining to his criminal conviction, including legal research he required for a motion to reopen post-conviction proceedings.  Also, Tarpley possessed legal materials belonging to two other inmates because he was assisting them with drafting post-conviction motions and petitions.  The documents amount to approximately 3.5 cubic feet of space.

Tarpley claims that Defendant Jeremy Crites ordered several searches of his cell.  On May 15, 2012, Defendant Damon Thomas conducted a search of his cell, tossing all of the

documents around the cell.  On September 14, 2013, Crites confiscated one of Tarpley's legal documents.  In September 2014, Crites and Defendant T. Leasure searched Tarpley's cell and took his neck brace.  On December 6, 2014, Crites ordered a search of Tarpley's cell resulting in confiscation of Tarpley's legal papers, which were returned three days later by Defendant Robert Harris.  On January 5, 2015, Crites ordered another search of Tarpley's cell, during which it was determined that Tarpley possessed paperwork in excess of the 1.5 cubic feet limit.  The excess paperwork was removed and placed in a storage facility.

Pursuant to prison policy, a prisoner who owns the excess property is permitted to determine what will be placed in storage and what will remain in the cell.  (Durst Aff., ECF No. 23-2).  The 1.5 cubic feet limit was created to ensure the security of the prison and avoid fire hazards.  (Id.).  All legal material placed in storage is accessible to the inmate upon his request. (Id.).  The inmate reviews his documents in private, and the inmate may make copies and take documents back to his cell, provided he does not exceed the 1.5 cubic feet limit.  (Id.). Generally, this is accomplished by exchanging documents kept in the cell for documents kept in storage.  (Id.).

During the January 5, 2015 search of Tarpley's cell, Defendant Gary Drozda discovered a piece of paper with the statement: "how do you spell relief? 10-13 officer's down (I.E.D. Improvised Explosive Device)" which Tarpley created.  (Id.).  Prison officials charged Tarpley for violating a rule prohibiting use of intimidating, coercive, or threatening language and found him guilty of the violation on January 20, 2015.  The officials sentenced Tarpley to serve 300 days on disciplinary segregation.  Tarpley's assignment to disciplinary segregation did not change the amount of space he was permitted for legal materials, nor did it change the procedure by which he was permitted to access material in storage.

Tarpley regularly accessed his legal materials in storage while on disciplinary segregation.  (ECF No. 23-2) (demonstrating that from January 5 2015 to August 24, 2015, Tarpley accessed his legal documents).  Tarpley received free copies of his documents due to his indigent status.  (Id.).  On June 15, 2015, Tarpley asked to have paperwork removed from his cell because it contained mold.  (Id.).  Pursuant to that request, two paper bags of documents were taken from the cell and placed in storage.

It is undisputed that Tarpley filed several administrative remedy procedure requests ("ARPs") concerning the January 5, 2015 search of his cell from January 5, 2015 through March 2, 2015.  After he was informed that the property was removed because it exceeded allowable limits, Tarpley's January 6, 2015 ARP was dismissed.  (Id.).  Tarpley did not appeal the dismissal to the Commissioner of Corrections' office.

On March 2, 2015, initiated this action alleging violations of his constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 (2012).  (ECF No. 1).  Specifically, Tarpley alleges Defendants have denied his right of access to to the courts in retaliation for bringing claims against Defendants.  On March 25, 2015, Tarpley filed a complaint with the Inmate Grievance Office ("IGO").[1]  Tarpley filed a Motion for Default Judgment (ECF No. 18) on August 21, 2015.  Defendants filed a Motion for Extension of Time to file an answer to the Complaint by September 22, 2015.  (ECF No. 20).  On September 8, 2015, Tarpley filed an Amended Complaint.  (ECF No. 21).  On September 22, 2015, Defendants file a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  (ECF No. 23).  On December 8, 2015, Tarpley filed a Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 27), rather than a response to Defendants' Motion.

---

[1] On May 11, 2015, the IGO dismissed Tarpley's complaint.

## II.   DISCUSSION

### A.  Motions for Default Judgment and Extension of Time

Federal Rule of Civil Procedure 55 states that the Clerk must enter default as to a party against whom a judgment for affirmative relief is sought when the party has failed to plead or otherwise defend.  The United States Court of Appeals for the Fourth Circuit, however, has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."  Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).

In Tarpley's Motion, he asserts that Defendants are in default for failure to file a responsive pleading on or before August 7, 2015.[2]  On August 7, 2015, Defendants, however, filed a Motion requesting an extension of time to file their response to the Complaint by September 7, 2015.  (ECF No. 17).  The Court granted the Motion on August 21, 2015—the same date Tarpley filed his Motion for Default Judgment.  (ECF No. 19).  On September 8, 2015, Defendants again sought an extension of time to and including September 22, 2015.  (ECF No. 20).  On September 22, 2015, Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

To ensure that this matter is decided on the merits, the Court will deny Tarpley's Motion for Default Judgment.  Also, finding good cause, the Court will grant Defendants' Motion for Extension of Time.

### B.  Motion for Injunctive Relief

To obtain a temporary restraining order ("TRO") or preliminary injunction, Tarpley must establish: (1) his likelihood of success on the merits, (2) irreparable harm to him if injunctive

---

[2] On July 10, 2015, the Court granted Defendants an extension of time to file a response to the Complaint by August 7, 2015.  (ECF No. 15).

relief is not granted, (3) that the balance of equities "tips" in his favor, and (4) that the injunction is in the public interest.  ISCO Indus., LLC v. Erdle, No. 5:11-CV-552-F, 2011 WL 5101599, at *2 (E.D.N.C. Oct. 26, 2011) (citing Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam)). "[A]ll four requirements must be satisfied."  Real Truth About Obama, Inc., 575 F.3d at 346 (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

In his Motion, Tarpley asserts that Defendants are improperly holding him in administrative segregation to thwart his efforts to litigate this case.  Tarpley explains that, although his disciplinary segregation sentence was supposed to expire on November 9, 2015. Defendants have not returned him to general population housing.  The record demonstrates, however, Tarpley has regularly accessed his legal materials in storage while on disciplinary segregation.  (ECF No. 23-2) (showing that from January 5 2015 to August 24, 2015, Tarpley accessed his legal documents).  All of the copies Tarpley received were provided to him for free due to his indigent status.  (Id.).  The Court, therefore, finds Tarpley has failed to demonstrate any irreparable harm.  Accordingly, the Court will deny the Motion.

### C.  Amended Complaint

Tarpley filed an Amended Complaint without seeking leave from the Court as required by Rule 15(a).  The Rule states, however, the court should freely give leave to amend when justice so requires, which "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."  Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006).  This standard is even more broadly construed for pro se litigants.  See Thomas v. Delmarva Power & Light Co., No. RDB-15-0433, 2016 WL 374076, at *2 (citing Gordon v.

Leeke, 574 F.2d 1147 (4th Cir. 1978) (holding that pro se civil rights litigants should be permitted to amend their complaints even if their motion for leave to amend does not state how the amendment cures deficiencies in an earlier pleading).  The grant or denial of an opportunity to amend is within the discretion of the Court.  Foman v. Davis, 371 U.S. 178, 182 (1962).

"[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."  Id. (emphasis added) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).  Defendants have not demonstrated that the Amended Complaint has been prejudicial, filed in bad faith, or futile.  The Court will, therefore, accept Tarpley's Amended Complaint.

Because the Amended Complaint includes many of the same allegations and claims as the original Complaint, the Court will resolve Defendants' Motion to Dismiss or for Summary Judgment as to the Amended Complaint.  See Fundamental Admin. Servs., LLC v. Anderson, No. JKB-13-1708, 2014 WL 1494288, at *2 (D.Md. Apr. 15, 2014) (applying motion to dismiss complaint to identical counts alleged in amended complaint in interest of expediency because Court determined it highly likely that defendant would file another motion to dismiss including the same arguments).

### D.  Motion to Dismiss or for Summary Judgment

#### 1.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for

6

summary judgment and disposed of as provided in Rule 56." <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)).  Under Rule 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247–48.

A "material fact" is one that might affect the outcome of a party's case. <u>Id</u>. at 248; <u>see</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Hooven-Lewis</u>, 249 F.3d at 265.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Bouchat v. Balt. Ravens Football Club, Inc.</u>, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all

inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  Bouchat, 346 F.3d at 526 (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993).

Here, because the Court will consider matters outside of the pleading, the Motion to Dismiss will be construed as one for summary judgment.[3]

### 2. Analysis

Defendants argue Tarpley failed to exhaust his administrative remedies regarding his claims for denial of access to the courts and retaliation.  The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e (2012).   The PLRA's exhaustion provision requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).  The Court may not consider a claim that has not been exhausted.  See Jones v. Bock, 549 U.S. 199, 219–20 (2007).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust

---

[3] "[N]o formal notice of conversion by the district court is required in cases where it is apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion."  Carter v. Balt. Cty., Md., 39 F.App'x 930, 933 (4th Cir. 2002) (per curiam).

administrative remedies is an affirmative defense to be pleaded and proven by defendants.  See Jones, 549 U.S. at 215–16 (2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir. 2005).   Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials."  Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).  In Maryland, the ARP involves a three-step process: the inmate files a request for remedy with the warden, then appeals a denial to the Commissioner of Corrections, and finally appeals any subsequent denial to the IGO.  Md.Code Regs. § 12.07.01.05(B).  In order to show administrative exhaustion, the plaintiff must demonstrate that he appealed his grievance through all three steps in the administrative process.

"Still, the exhaustion requirement is not absolute."  Blake v. Ross, 787 F.3d 693, 698 (4th Cir. 2015).  The United States Court of Appeals for the Fourth Circuit has adopted an exception to the PLRA exhaustion requirement, involving a two-prong inquiry:

> first, whether "the prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing," and second, "whether the prisoner's submissions in the disciplinary appeals process exhausted his remedies in a substantive sense by affording corrections officials time and opportunity to address complaints internally."

Id. (quoting Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007)).

Here, Defendants demonstrate Tarpley filed an ARP on January 6, 2015 regarding the removal of his legal materials on January 5, 2015.   On January 29, 2015, an investigator interviewed Tarpley regarding his claim.  On February 4, 2015, the ARP was dismissed.  From February 11, 2015 to March 23, 2015, Tarpley continued to file ARPs with the Warden regarding the removal of his legal materials, but did not file an appeal of the grievance to the

Commissioner of Corrections.  On March 25, 2015—nearly a month after initiating this action—Tarpley filed a complaint with the IGO.  The Court finds that, at the time Tarpley initiated this action, he failed to exhaust his administrative remedies.  And while the exhaustion requirement is not absolute, Tarpley has not demonstrated that his failure to exhaust available remedies was justified.  Although the Court finds Defendants' alleged destruction of Tarpley's legal material troubling, Defendant have demonstrated that they are entitled to judgment at as a matter of law.  Accordingly, the Court will grant the Motion for Summary Judgment.

### III.   CONCLUSION

For the reasons stated above, Plaintiff's Motions for Default Judgment (ECF No. 18) and for Injunctive Relief (ECF No. 27) are DENIED; Defendants' Motion for Extension of Time (ECF No. 20) and Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 23) are GRANTED.  The Clerk shall CLOSE this case.  A separate Order follows.

Entered this 4th day of March, 2016

/s/
_____
George L. Russell, III
United States District Judge